Hart v. Sanderson's Administrators—Syllabus.

Catherine S. Hart, as Executrix and in her own right, Appellant, vs. Sanderson's Administrators, Appellees.

1. Where there has been a final hearing, an appeal, a reversal of the decree and a remanding of the cause, as a general rule, an amendment to an answer by the addition of facts which, if they existed, must have been known at the time of the filing of the original answer, will not be allowed. Such an amendment should never be allowed in cases where the facts constituting the defence to be set up are not upon the showing made, rendered highly probable, if not certain, nor should it be permitted where (independent of defendant's conclusions) the *facts* desired to be added are not clearly material to the defence.

2. Upon hearing upon bill, plea and answer in support of the plea, every fact stated in the bill, and not denied by the plea or the answer in support thereof, must be taken as true, so also must the facts stated in the plea and answer be taken to be true.

Hart v. Sanderson's Administrators—Syllabus.

3. The wife having joined in the execution of a mortgage deed with her husband, an acknowledgment by her made in the manner prescribed by statute, that she made herself a party to and executed the foregoing deed of mortgage "for the purpose of conveying and mortgaging all of my estate *in esse* and *in futuro* in the lands therein described," is sufficient to bar her dower interest.

4. The statute authorizing the private examination of the wife to bar dower is a substitute for the proceeding at common law to bar dower by fine and recovery. As against a mortgagee of the fee of the husband, which mortgage was accompanied by a relinquishment of the dower of the wife, an acknowledgment thus made cannot be impeached by her testimony alone. Such an acknowledgment may be impeached for fraud, but the proof to sustain such charge must be of the clearest, strongest and most convincing character.

5. While the rule is not universal that a power to sell includes a power to mortgage, yet a power to alienate a homestead in a prescribed manner involves the power to mortgage it in such manner. This power, existing both independent of and under the Constitution, a fair, consistent construction of the clause exempting the homestead from "forced sale," must exclude its application to a sale under a mortgage. A sale under a mortgage is not a forced sale within the meaning of the Constitution. The case of Patterson vs. Taylor and Randall, 15 Fla., 337, referred to and approved.

6. The wife having joined in the deed of mortgage of the husband conveying the homestead, and both parties in such deed having expressly waived all benefit of exemption and homestead, and stipulated that the land conveyed shall never be claimed to the prejudice of the grantees, she having also upon a separate examination acknowledged that she made herself a party to the deed for the purpose of conveying all of her estate *in esse* or *in futuro*, cannot, upon the death of her husband, either as heir-at-law or as executrix of his will, resist a sale under a decree based upon said mortgage upon the ground that it was a forced sale, or that the homestead had not been alienated with the joint consent of the husband and wife. Quere : Whether in case of a testate estate the widow as heir has in any case an equity to claim the benefit of a homestead exemption enjoyed by the husband ?

Appeal from the Circuit Court for Duval county.

The facts are stated in the opinion.

*D. C. Dawkins* for Appellant.

*John T. Walker* for Appellee.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is the second appeal in this case. Upon the former appeal the decree of the Circuit Court was reversed, and the case remanded for further proceedings.

A statement of the case then before the court will be seen by reference to 16 Fla., 267.

The cause being remanded, the plaintiffs, who are respondents here, set the cause down for hearing upon the bill and the plea and answer in support thereof, and the cause came on to be heard on the 14th of May, 1879. After argument of counsel the defendant asked leave to amend her answer. The court heard the motion and denied it. Afterwards, upon a hearing upon the bill, plea and answer in support thereof, the court held that the plea and answer set up no defence, and, after decree of reference to a master and proceedings before him, the relief prayed by the bill was decreed.

The first ground upon which a reversal of the decree is here sought is the refusal of the court to permit the amended answer to be filed.

The bill is to foreclose a mortgage of land, executed by husband and wife, in the execution of which both the husband and wife joined.

In the mortgage they "waived all benefit of exemption and homestead," and stipulated that the "same shall never be claimed to the prejudice of the grantees, their successors or assigns." In the separate and private examination of the wife she acknowledged that she "made herself a party to and executed the foregoing deed of mortgage for the purpose of conveying and mortgaging all of her estate *in esse* and *in futuro* in the lands therein described."

The original plea set up a claim of homestead. The answer in support of the plea admits the execution of the

mortgage ; that it contained the covenants and stipulations mentioned ; that the amount of money claimed as due was due, and that she executed the mortgage and signed the acknowledgment as stated. She denies, however, that she did it voluntarily, alleging that while no actual force or violence was employed, she had a well grounded apprehension and fear that unless she signed the acknowledgment the peace and happiness of her married relation with her husband would be materially disturbed, if not totally destroyed, and this she alleges was well known to her husband. The amended answer, leave to file which the defendant requested, alleges that the notary before whom her acknowledgment and relinquishment of dower was made knew at the time of his taking the same that defendant did not do so voluntarily, because defendant then and there said to him, in a tone of voice loud enough to be heard by him when interrogated, that she did not consent freely and voluntarily to sign away her right of dower, but that she would sign the paper because her husband wished her to do so. Of these facts defendant charged that plaintiff had notice, because, as she says, the said notary, being also an attorney-at-law, seemed to be representing the complainants, and the note and mortgage sought to be foreclosed are in the hand-writing of the notary, or so much thereof as is written and not printed.

What are the circumstances under which this amended answer is sought to be filed ?

It is after a final decree, appeal therefrom, reversal of the decree, a remanding of the cause for hearing upon the plea and answer originally filed, after the cause being set down for hearing, and after the expiration of nearly four years from the filing of the original answer.

No reason is given for this delay, and no averment is made that all the facts set forth in the proposed amended

answer were not known to the defendant when the original answer was filed and the facts sought to be placed in the amended answer are such as must have existed and been known when the original answer was filed.

The application here made was addressed to the discretion of the court, for according to no known rule of practice controlling the subject did the defendant have a right to amend at this stage of the proceedings and under the circumstances stated. The general rule is that an amendment to a sworn answer by the addition of material facts known to the defendant at the time the original answer was sworn to, will not be permitted on a final hearing, (23 N. J. Eq., 498 ; 1 Daniell Chy. Prac., 778, 780,) and certainly the rule must apply to this case where there had been a final hearing, an appeal, a reversal of the decree, and a remanding of the case.

In Smith vs. Babcock, 3 Sum., 585, Mr. Justice Story said : " It seems to me that before any court of equity should allow such amended answers, it should be perfectly satisfied that the reasons assigned for the application are cogent and satisfactory ; that the mistakes to be corrected, or the facts to be added, are made highly probably, if not certain ; that they are material to the merits of the case in controversy ; that the party has not been guilty of gross negligence, and that the mistakes have been ascertained and the new facts have come to the knowledge of the party since the original answer was put in and sworn to."

In this case we do not see that the amended answer sets up such facts as are material to the defence. In other words, what is proposed to be set up by way of amended answer does not constitute a good defence. The original answer sets up that while she executed the deed and the acknowledgment that its execution was her voluntary act, still she did not thus act voluntarily, but

that she did so to preserve the peace and happiness of her married relation, and that her husband knew this. The amended answer alleges that the notary-public taking the acknowledgment knew that defendant did not do so voluntarily because she so declared to him, and because the notary seemed to represent complainants. There is nothing accompanying the amended answer to show that there is any evidence of this fact, except the statement of the defendant, and the only fact which the defendant gives as the basis of her opinion that the notary represented the complainants is that the note and mortgage were, so far as they were in writing, in the hand-writing of the notary. Even admitting the truth of this last allegation, we do not see how this renders her acknowledgment in any manner defective. It is customary for the notary to draw the acknowledgment, and we cannot see how this filling up the blanks in a printed deed vitiates the deed, or how this renders him counsel for either party, nor do we see that her acknowledgment of the voluntary execution of an instrument made in the terms of the law is to be overcome by her subsequent simple denial of its proper execution, when her contract is sought to be enforced against her. Looking to this pleading, that is all that the amended answer proposes to allege in these respects.

In the case of Kerr vs. Russell, 69 Ill., 670, Mr. Justice Breese, speaking for the court, said : " The unsupported testimony of a party to a deed that he did not execute it shall not prevail over the official certificate of the officer taking the acknowledgment. Public policy, the security of titles, the peace of society, demand such a rule and a strict adherence to it. This court has often said that the provision of the law authorizing a Justice of the Peace, or other designated officer, to take the private examination of the wife was designed as a substitute for the proceedings at

common law by fine and recovery, whereby the rights of the wife on the one hand might be guarded, and a sure, indefeasible and unquestionable transfer of her right secured on the other. It cannot be supposed, whilst the Legislature were protecting the wife, they had no regard to the importance of inspiring confidence in the title. * * No man could be content with a title in all respects perfect upon its face, when, upon the death of his vendor, his widow, with the assistance of the magistrate, or without it, as in this case, may undo what they have solemnly done, and without the possibility of contradiction, since the magistrate and the wife are alone privies and parties to her examination. Of what value would privy examination be where the wife has been quiet during the life-time of her husband, and conjures up at a remote day objections which are allowed to prevail? Who would take a deed to which a married woman is a party with these probable direful results staring him in the face? Everything in relation to title would be thrown into utter confusion, and irretrievable mischief would be the certain consequence." The court then say that such an acknowledgment, like a fine and recovery at common law, for which the acknowledgment is substituted by statute, might be impeached for fraud, but " the proof to sustain such charge is required to be of the clearest, strongest and most convincing character by disinterested witnesses."

In the case of the Singer Manufacturing Company vs. Rook, et ux., 84 Pen. State, 442, the Supreme Court of Pennsylvania state the law to be that " where a married woman joins her husband in a mortgage to encumber her separate estate as to a bona fide mortgagee for value, without notice of fraud or imposition in the procurement of the execution of such instrument, the certificate of the magistrate who takes the acknowledgment is conclusive of every material

fact expressed therein. This certificate of the officer is a judicial act, and cannot be impeached except for fraud." See also 53 Miss., 331 ; 107 Mass., 324 ; 1 Har. and McH., 211 ; 11 Ohio State, 202 ; 6 Texas, 208. While this is not the case of a transfer of separate estate, still the principle as to the acknowledgment of the deed is entirely applicable.

Accepting the law as thus stated, this proposed amended answer set up no meritorious defence, and for this alone the court could have properly refused permission to file it.

The only other action of the court which the record presents for our consideration is the final decree made upon the bill, the plea and answer in support of the plea. The appellant here discusses the case as though it were the case of a hearing upon bill and answer. The hearing was had upon bill, plea and answer in support of the plea. The rule in such hearings is that every fact stated in the bill, and not denied by the averments in the plea, or by the answer in support of the plea, must be taken as true. Hart's Extrx. vs. Sanderson's Admrs., 16 Fla., 267, and cases there cited. This is the rule as to facts stated in the bill and not denied by the plea or answer, and as to the facts stated in the plea and answer, they must be taken to be true as pleaded.

Now, neither the plea nor the answer in this case denies the execution of the mortgage or the acknowledgment by defendant. The result of this is that such execution is admitted. Indeed, the defendant admits such execution expressly. Not only is this true, but (except as to the allegation that the money, to secure which the mortgage was given, was expended upon the mortgaged premises, which is denied,) the case as stated by the bill, that is the facts set up and properly pleaded, are admitted by the plea and answer; the plea and answer proposing to set up matter constituting a sufficient reason why the plaintiff should not

have the relief he prays notwithstanding the truth of his bill, except in the particulars mentioned. Daniell Chy. Pldg. and Prac., 605 ; 2 Paige, 177 ; 3 ib., 222 ; 4 ib., 364.

Now, the plea here sets up that the mortgaged premises were the homestead of the mortgagor; that the defendant was the wife of the mortgagor ; that he was dead ; that she has an interest as his heir-at-law, and that she was the executrix of his will ; that said premises have been occupied as a homestead since his death, and that no part of the money borrowed was used in the purchase of or to improve the premises. The answer in support of this plea, while admitting the execution of the mortgage deed and acknowledgment, makes the same denial as to the use of the moneys, and she affirms therein that her action in the matter of the execution of the mortgage and acknowledgment was not free and voluntary, but that while no actual force was employed she had a well-grounded apprehension and fear that unless she signed the same the peace and happiness of her marriage relation with her husband would be materially disturbed, and that this, her apprehension, was known to her husband.

We have already seen that what is here alleged as to an acknowledgment and relinquishment of dower upon examination, as required by the statute, constitutes no defence where there is such a relinquishment as conforms to the statute.

Is there such a relinquishment here ?

This question is not expressly raised by the plea and answer, nor is there any cross-bill ; still it arises upon the face of the bill, and exhibits thereto. But however this may be in view of the conclusion we reach, neither the defendant nor plaintiff can well complain, as the defendant argues the question generally ; and the plaintiff cannot well do so, the conclusion of the court being in his favor. The mort-

gage deed executed by the wife contains a covenant of warranty against all persons, and is accompanied by an acknowledgment, made in manner as directed by the statute, that she made herself "a party to and executed the foregoing deed of mortgage for the purpose of conveying and mortgaging all of my (her) estate *in esse* and *in futuro* in the lands therein described." The covenants are perhaps inoperative as to the wife.

The statute does not require that the terms "relinquishment of dower" shall be contained in the deed which is signed, or the acknowledgment which is made, in order that a good and sufficient relinquishment of dower may be made. The statute provides that dower may be extinguished by the wife making herself a party to the deed for the purpose of relinquishing the same, accompanied by an acknowledgment, made separate and apart from her husband, that the relinquishment and renunciation of dower is made freely, &c.

In this case the wife makes herself a party to the deed, signs it, and acknowledges, upon an examination made under the statute, that she executed the deed "for the purpose of conveying and mortgaging all of my (her) estate *in esse* and *in futuro* in the lands therein described."

The Supreme Court of the United States, 5 Wall., 807, states the rule in reference to the private examination of a *feme covert* to be that equivalent words, or words which convey the same meaning, may be used instead of those to be found in the statute. See also 3 Ohio, 153. This is in reference to the words used as descriptive of the manner of making the acknowledgment, but we see no good reason for the application of a different or other rule when the extent and nature of the estate conveyed is considered, and certainly in this case the wife must have known that she intended to part with all her interest when she says that

her purpose was to convey and mortgage all of her estate *in esse* and *in futuro*, all her estate then existing or to exist. In the case of Hartley vs. Ferrell, 9 Fla., 381, this court held an acknowledgment of a relinquishment of dower effective as an acknowledgment applicable to the separate estate of the wife. The court in that case say: " The execution of this acknowledgment was manifestly intended to convey some interest in the premises, or it was made in pursuance of a premeditated fraud. Mrs. Sellers had no dower interest; her only interest was in the fee. If the fee was not intended to be conveyed, then no interest was passed to the grantee, and the whole transaction bears the impress of an unmitigated attempt at fraud." We have very considerable doubt of the correctness of this decision. 6 McLean, 206, and cases there cited. It certainly goes very far to sustain titles. This is and should be the inclination of courts at all times. Our conclusion here is that it was not absolutely necessary to use the word dower in this acknowlment; that it is sufficient to use words embracing such an interest of the wife, and that with such an acknowledgment it is not necessary for the wife to state in the joint deed that she signed it for the purpose of relinquishing her dower interest. The statute provides that her dower may be extinguished by " making herself a party to the conveyance " with such purpose. Here she has made herself such a party, and by her acknowledgment, taken as the statute requires, she states her purpose to have been to convey all of her interest in the land. 13 Ark., 423. To hold under our statute, as has been held in some of the States under their statutes, that the deed itself must contain express words conveying the dower interest, would be to add to the requirements of our statute. This we are certainly not disposed to do. The Legislature has not prescribed a form of acknowledgment that is to be *literally* pursued, and a substan-

tial compliance with its requirements is all that is necessary. To require a literal adherence to the express words of the statute as essential to the validity of acknowledgments would be attended with destructive consequences.

The only other remaining questions in this case are whether, after the express waiver of all right of homestead by the husband and wife, and their joint deed of mortgage, a sale under a decree in equity is a "*forced sale*," and whether there has been an alienation of this real estate by the joint consent of the husband and wife, within the meaning of the Constitution.

The first question, we think, has in principle been settled by this court in the case of Patterson vs. Taylor and Randall, 15 Fla., 337. A sale under a mortgage of personal property was there held not to be a *forced sale* within the meaning of the Constitution. In this case we have not simply a mortgage, as in that case, but we have each of these parties, husband and wife, expressly waiving in their deed " all benefit of exemption and homestead," and a stipulation " that the same " (the land) " shall never be claimed to the prejudice of the grantees." Certainly, when they thus expressly contract, a court of equity will not assist them in interposing an obstacle to the recovery of this money.

An individual cannot be said to have been compelled to do an act when it is the result of his own express agreement. The view, as expressed by this court, is that a sale resulting from contract, a mortgage in the case referred to, while it may be a sale under process of law, is not a *forced sale* within the meaning of the Constitution, and that without any express waiver of homestead exemption in that case. That view, we think, is correct. The framers of the Constitution, we think, never intended to restrict the right of the owner of property to an absolute and clear sale of his in-

terest therein.   As against general debts made without ref-
erence to homestead liens as a security, a sale had after
judgment thereon involves no element of consent, but when
a sale is the result of a contract, involving consent to sell
as to a particular piece of property, according to all fair,
honorable and just dealing, it cannot be said to be "*forced.*"
Cases involving the greatest wrong and injustice might re-
sult from a contrary view.   A husband and wife to-day
execute a mortgage on the homestead expressly waiving all
right of exemption.   To-morrow the husband dies ; the
money is distributed to those entitled ; the exemption ac-
crues to the heir; the creditor loses his money, and the
property is no security, although expressly made so by con-
tract and consent.

We think, for the reasons stated, that the sale here de-
creed is not a forced sale.   Has there been such consent to
an alienation as the Constitution contemplates ?   To this
mortgage the wife has made herself a party ; she has there-
fore consented to it.   There is nothing in the Constitution
or the statutes requiring any separate examination of the
wife in order to evidence such consent.   She has, by virtue
of her power to refuse assent to an alienation, no estate in
the land, (46 Wis., 683 ;) and this assent is certainly shown
by her joining in the deed.   She has, under her hand and
seal, solemnly given her consent jointly with her husband,
and this is sufficient.

It remains to consider the effect and purpose of the word
" alienable," as used in the Constitution in the connection
in which it is found.   The provision is that the " real es-
tate " (meaning real estate constituting the homestead)
" shall not be alienable without the joint consent of hus-
band and wife."   It follows the exemption from " forced
sale."

This provision is simply a restriction upon an admitted

power otherwise to sell or encumber.   If the Constitution did not contemplate a power in the head of the family to sell in the absence of a restriction, a restriction would be unnecessary and useless, and the restriction here applies to the power to mortgage only because it is an alienation within the meaning of the Constitution.   While the rule is not universal that a power to sell includes a power to mortgage, yet wherever there is a power to alienate the homestead in a prescribed manner, the courts have held that such power included the power to mortgage.   6 Texas, 114 ; 4 Nev., 383 ; 2 Gray, 385.   While there is an admitted difference in the views of the courts as to what constitutes a "*forced sale*," I can find no case which holds that a power to alienate in a prescribed method does not embrace the power to mortgage.   Thomp. on Hom., §456.

In conclusion we will remark that the Constitution having expressly contemplated the power to mortgage according to a fair construction of the power to " *alienate*," the terms "*forced sale*," which, to say the least, are indefinite and uncertain, should be controlled to some extent by the obvious meaning of the other portion of this clause.   To construe the Constitution so as to confer or admit a power to mortgage, and at the same time prohibit a sale under a decree to sell under such mortgage, cannot be sanctioned by any proper rule of construction.   Such a construction is absurd.   One or the other of these propositions is wrong, and there is less doubt that the term alienable confers or admits a power to mortgage than there is that the terms " forced sale " should be restricted to sales involving no assent by contract, referable to the special property to be sold.

We have discussed the question of homestead exemption in the light of the argument and of the pleadings in this case.   We do not, however, see clearly how the widow, where there is a will, either as widow or executrix, in view

of the provisions of section 3, Art. 9, of the Constitution, has an equity by virtue of an exemption which accrues to *the heir* of the party having enjoyed such exemption, such party being the deceased husband.

The decree is affirmed.